JONES, J. concurring in part and dissenting in part: I reluctantly concur with Section A of the majority opinion, but only because the standard of review is whether the district court abused its discretion. Extending my deference of the district court’s discretion to its absolute maximum, I agree that the district court did not exhibit bias against Gibbs. Turning, however, to Section B of the majority opinion, I simply cannot agree that the district court did not abuse its discretion when it modified Gibbs’ probation term. I firmly believe that the district court judge fell far short of the permissible discretion when he extended Gibbs’ probation from a term of six years to a term of life. Specifically, I believe that the district court’s conclusion was not reached through an exercise of reason. The majority thinks that this is a close case with respect to the issue of bias, but also recognizes that this case raises a significant question as to whether the district court’s decision constitutes an abuse of discretion. The majority admits that it “might well have reached a different conclusion as to whether probation for life was necessary in Gibbs’ case.” However, the majority then acknowledges that it is not our task to determine whether we agree with the district court’s decision, but instead it is our task to decide whether the district court abused its discretion. Although I agree with the majority’s statements, I simply cannot agree that there was no abuse of discretion here. Looking at the facts of this case, it is apparent that the district court was dissatisfied with the parties’ plea agreement in which the prosecutor proposed dismissing the state court proceedings in exchange for Gibbs’ guilty plea to federal charges regarding possession of child pornography, which would likely result in a substantial federal sentence. Upon receiving notice of the parties’ intent to dismiss the allegations that Gibbs violated his probation, the judge acknowledged various steps that could be taken before he would proceed with modifying probation, e.g., appointing a special prosecutor and holding an evidentiary hearing. However, upon realizing that these alternative options “seemed to be a lot of work,” the judge placed Gibbs on probation indefinitely and justified his decision by stating that it was in the best interest of society. For a decision to be reached through an exercise of reason, especially a decision extending probation, I believe that a probationer must be given the opportunity to dispute allegations upon which a probation extension is based. Despite the prosecution’s decision to dismiss the motion to show cause, the judge assumed that the probation violation allegations originally levied against Gibbs were true, and he based his decision to extend Gibbs’ probation on these unproven allegations. The judge began by stating that he had “the ability to enforce [his] own orders, and if these allegations are proven true, my intention is to impose [Gibbs’] Idaho prison sentence.” (Emphasis added). At the next hearing, the judge changed course and determined that it would be appropriate to appoint a special prosecutor and hold an evidentiary hearing. Had an evidentiary hearing been held, I would have no problem with the result because Gibbs would have had an opportunity to be heard and defend himself before the modification of his probation. However, thereafter, the judge changed course again, stating that he had reached a “simpler solution” and would: [G]et an order out today increasing the length of pi'obation, same terms and conditions, to life, and then when Mr. Gibbs gets out [from his federal prison sentence], if I’m still a judge, then I can decide whether or not to proceed with a probation violation, and if I don’t, then [Gibbs is] still on probation which I think would be a benefit to the public that [Gibbs] be on probation in addition to any parole [Gibbs] might be on with the federal system .... In response to defense counsel’s inquiry as to whether the district court would still be appointing a special prosecutor, the judge replied no, “that seemed to be a lot of work and—and I think this is a better result for the public. I think I can protect the public better this way than what I was proposing doing earlier.” While the result may be a “simpler solution,” it offends principles of due process. As noted by the majority, there is no doubt that a court has the power to modify the terms or duration of probation for good cause after notifying the parties and affording the parties an opportunity to be heard. I.C. § 20-221; I.C. § 20-222(2). However, a review of the transcript in the present case shows no discussion, analysis, or argument on the modification of the terms of probation. Moreover, the judge did not offer the parties a reasonable opportunity to be heard, i.e., to offer information in mitigation. The parties arrived at the hearing believing that they would be discussing the appointment of a special prosecutor. Instead, the judge essentially ambushed the parties with a sua sponte decision to extend Gibbs’ probation. I firmly believe that the judge was not happy with the proposed plea agreement and decided that—instead of appointing a special prosecutor—the “simpler solution” was to punish the defendant by increasing the probation from a term of six years to life, and to leave him with the threat that the judge might revive the probation violation at a later time. It is firmly established that, in reviewing whether a lower court has abused its discretion, this Court must determine “(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.” State v. Hedger, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (internal citation omitted). In the present case, there is no question that the district court rightly perceived the issue as one of discretion, and acted within the outer bounds of such discretion—although, the district court certainly toed the line of the outer bounds of its discretion by imposing a lifetime of probation. However, as I indicated earlier, there was no “reason” involved in any of this proceeding. There was absolutely no reason exercised in any of the interplay between the defendant, the prosecutor, and the district court. In short, the plea agreement proposed by the parties upset the judge, and the proceeding degenerated into an argument in which the judge sought to determine what he could do within his discretion to upset the prosecutor’s plan to dismiss the probation violation allegations. Ultimately, the judge succumbed to a knee-jerk reaction, extending Gibbs’ probation to a term of life and putting the probation violation issue on hold until the federal process is complete. As an example of judicial discretion, the context of this proceeding would leave a damaging image in an observer’s mind, of a judge who handed out an arbitrary sentence based on no reasoning whatsoever. The transcript of these proceedings will certainly not paint a favorable impression of judicial conduct to the average citizen. Instead, the picture it portrays is that of a defendant caught up in a dispute between a prosecutor and a judge that ends with a lifetime of probation. This order was entered by a judge that, although probably not biased, was at least angry enough to impose a life term of probation. Instead of acting reasonably, the district judge repeatedly showed his disdain for the parties’ plea agreement, and when the parties disagreed with him, he independently elected to proceed with an order that will affect Gibbs for the rest of his life. The bottom line is that the judge’s decision to extend Gibbs’ probation to a term of life was rooted in his anger rather than through an exercise of reason.